UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DARLA ANGELLE,                                         DOCKET NO. 11-cv-2053
on behalf of J.A. (a minor)

VERSUS                                                         JUDGE MELANÇON

MICHAEL J. ASTRUE,                               MAGISTRATE JUDGE HANNA
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION


# REPORT  AND  RECOMMENDATION


Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that this case be REMANDED for consideration of additional

evidence.

## BACKGROUND AND THE COMMISSIONER'S FINDINGS

On December 17, 2008, Darla Angelle filed an application for Supplemental

Security Income benefits and any other applicable benefits available under Title XVI

of the Social Security Act for her grandson, J.A. [Tr. 112]  J.A. was born on June 14,

2003, and he is currently nine years of age.  The application for benefits alleges a

disability onset date of June 14, 2003[1] and is based upon J.A. having been diagnosed

---

[1]At the hearing the claimant's attorney sought to change the onset date to June 2, 2008, which
request was granted. [Tr. 34]

with attention deficit hyperactivity disorder ("ADHD"), seizures, and a "short arm." [Tr. 112].

Upon initial determination, the Commissioner denied the application and Angelle requested a hearing, which was held on March 12, 2010 before Administrative Law Judge ("ALJ") Steven C. Graalmann. [Tr. 30]  The ALJ rendered an unfavorable decision on May 19, 2010, finding that J.A. was not disabled under the Act's standard for child disability. [Tr. 11-29] After receiving additional exhibits from Plaintiff, the Appeals Council denied review on October 6, 2011, making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review.

On November 28, 2011, Darla Angelle filed the instant Complaint in this Court, seeking judicial review of the ALJ decision pursuant to 42 U.S.C. §405(g). [Rec. Doc. 1] She is represented by counsel on this appeal.

## ASSIGNMENT OF ERRORS

The claimant asserts that (A) the ALJ failed to properly evaluate the medical opinion evidence; (B) failed to fulfill his duty to develop the record; and (C) the ALJ's findings regarding J.A.'s limitations in the domains of (I) acquiring and using information, (ii) attending and completing tasks, and (iii) interacting and relating with

others are not supported by substantial evidence, as the ALJ failed to evaluate relevant evidence. [Rec. Doc., 11, p. 6]

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[2]  If the Commissioner's findings are supported by substantial evidence and the decision comports with relevant law, the decision must be affirmed.[3]  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.[4]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[5]  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[6]  In applying this

---

[2]     42 U.S.C. § 405(g); *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001);

[3]     *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[4]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[5]     *Boyd v. Apfel,* 239 F.3d at 704.

[6]     *Singletary v. Bowen*, 798 F.2d 818, 823(5th Cir. 1986).

standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]  A claimant has the burden of proving his disability.[8]

## CHILDHOOD DISABILITY BENEFITS

An individual under the age of eighteen is considered to be disabled if he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[9]

A three-step evaluative process is utilized to determine whether a person under the age of eighteen is disabled.[10]  At step one, it must be determined whether the claimant is engaging in substantial gainful activity.  A child claimant who is engaging in substantial gainful activity will be found not disabled regardless of his medical condition, age, education, or work experience.[11]

At step two, it must be determined whether the claimant has a medically determinable severe impairment or a combination of impairments that is severe.  A

---

[7]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[8]     See *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

[9]     42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906.

[10]    20 C.F.R. § 416.924; *Lopez v. Barnhart*, 176 Fed. App'x 618, 619 (5th Cir. 2006).

[11]    20 C.F.R. § 416.924(b).

child found to have a slight abnormality or a combination of slight abnormalities that cause no more than minimal functional limitations will be found to be not disabled.[12]

At step three, it must be determined whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing or that functionally equals a listing.[13]  When the impairments do not meet or equal a listed impairment, the Commissioner will evaluate the functional limitations caused by the child's impairments to determine whether they are disabling.[14]

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

The medical record available to the ALJ prior to issuance of his decision establishes that from May, 2004 through mid-July, 2008, J.A.'s treating pediatrician was Dr. Bryan Sibley.  Dr. Sibley has reported that "Based on my medical findings," J.A. had no limitations in learning, motor function, performance of self care, communication, socializing and completing tasks. [Tr. 187-88] Dr. Powlin Manuel began seeing J.A. in January, 2008, and the record contains his treatment notes through February 22, 2010.  During that time, he heard complaints from J.A.'s

---

[12]     20 C.F.R. § 416.924(c).

[13]     20 C.F.R. § 416.972.

[14]     20 C.F.R. § 416.926a.

grandmother about the child's behavior problems at home and at school.  In November, 2008, Dr. Manuel conducted an ADHD evaluation on J.A., though he had been medicating the child for that diagnosis for some time before that date. [Tr. 196-200] On the ADHD Preliminary Evaluation form, Dr. Manuel noted that a school evaluation had been recommended, and he had reviewed behavioral scales completed by J.A.'s grandmother and his teacher.  His file also contained samples of J.A.'s school work.  In the differential diagnosis section of the form, Dr. Manuel noted that learning disability was a "likely" diagnosis, but all other listed diagnoses, including seizure disorder, developmental delay, adjustment disorder, mood disorder, opposition defiant disorder and conduct disorder were noted to be "unlikely." [Tr. 197] He settled on the diagnosis of ADHD-combined type and learning disability and formulated a medication/treatment plan accordingly. [Tr. 197] By February, 2009, Dr. Manuel noted that J.A.'s teachers described him having good days and bad days. [Tr. 235]  After medication adjustments, by April, 2009, the doctor noted improvement at school and at home, referencing J.A.'s better grades, calmer home life and better control of aggressive behavior. [Tr. 230] By June 4, 2009, the doctor noted that J.A. has passed from kindergarten to first grade; his sleep was good and he had good, with occasional bad days at home. He recorded his Impression as "ADHD, Agg. Behavior-good control."[Tr. 229] In November, 2009, J.A. was noted to be running around,

talking a lot and having outbursts at times, but his sleep was good. [Tr. 273]

J.A.'s medical history regarding seizures includes records from Lafayette General Medical Center when the child was seen in the emergency room on January 4 and April 8,2008 for reported seizures.  They were diagnosed as febrile seizures; mental status exams on both occasions were noted as normal, and a follow up EEG result was also normal. [Tr. 174-75, 178-79, 182] He was seen by Dr. Lawrence Christy, who prescribed medication for seizure control, recording his impression that J.A. was "Healthy" with febrile seizures. [Tr.185]  By February, 2010, J.A. was seen by pediatric neurologist Dr. John Flatt, who obtained an MRI of the brain, which was unremarkable, and an EEG, which was interpreted as abnormal, indicating "the possible presence of a partial epilepsy." [Tr. 254-55]

In addition to records from treating physicians, the ALJ obtained testing and evaluation of J.A. by Mark Fruge, PhD in April, 2009. Dr. Fruge interviewed J.A. and his grandmother, and he conducted intellectual testing on the child.  The parent reported that J.A. was responding positively to medication management, and Dr. Fruge noted that the parent could likely benefit from positive parenting training. [Tr. 267]  He found J.A.'s intelligence to measure within the low average range.  His adaptive behavior functioning was found to be consistent with cognitive expectations.

He noted evidence of significant parent/child relational problems and oppositional behavior by J.A.

According to Dr. Fruge, ADHD behavior was not observed at the assessment, nor was any other significant emotional behavioral pathology observed. [Tr. 266] The consultant recorded his opinion that J.A.'s ability to acquire/use information and complete tasks, to interact/relate with others and to care for himself are negatively affected by low average intellectual functioning, underdeveloped educational skills and ODD.  No problems were observed with the child's ability to move about and manipulate objects.  J.A.'s seizure disorder was being medically managed, and except for bedwetting, no other well-being issues were reported. [Tr. 267]

In May, 2009, J.A.'s medical and school records were reviewed by Dr. Joseph Michalik.[15]  He did not examine or interview J.A.  He did, however, review and consider the record evidence and the factors outlined in the SSA-538-F6 form. [Tr. 217] In making the requisite domain evaluations, Drs. Ray/Michalik found no limitation in J.A.'s ability to acquire and use information; 'less than marked' limitation in his ability to attend and complete tasks; 'less than marked' limitations in his ability to interact and relate with others; no limitation in his ability to move

---

[15]The record indicates that Kelly Ray, PhD also considered the record and participated in the analysis presented in the SSA-538 form. [Tr. 217]

about and manipulate objects, and no limitation in his ability to care for himself. [Tr. 218-19] In the domain of health and physical well-being, the consultant found that J.A. has 'less than marked' limitation, with the notation regarding J.A.'s age and history of febrile seizures, along with the reference that no documentation appears in the record regarding the initial allegation of one arm being shorter than the other. [Tr. 219] Based on those findings, the consultant concluded that the recognized impairments or combination of impairments do not functionally equal the listings. [Tr. 220] By way of explanation, the consultant cited to records of Dr. Powlin Manuel which documented normal physical exams, medication management efforts and repeated notations by the treating doctor that there was no evidence of agitation, depression, or anxiety. [Tr. 221] Reference was also made to the April, 2009 evaluation of J.A. by Dr. Fruge and his opinion that there was no significant ADHD or emotional/behavioral pathology observed. [Tr. 221]

The SSA-538 form completed by Drs. Ray/Michalik were reviewed in May, 2009 by Dr. John Parker, who disagreed with the findings, explaining his conclusion that

> There is a report of daily activity from the mother but we need the usual classroom teacher's report which I cannot find in the file. The reports sent to the TP are inadequate to determine severity of impairment and complete 538. [Tr. 224]

Dr. Parker did not offer his own assessment based on "insufficient MER." [Tr. 225]
On June 2, 2009, a Request for Corrective Action was made by the Philadelphia
Disability Quality Branch to the DDS, calling for collection of more medical
evidence.  [Tr. 122-23] From June 2, 2009 to the date of the hearing, additional
school and medical records were collected and available for review by the ALJ, as
described herein.

*The Administrative Hearing:*

The hearing was convened by ALJ Steve Graalmann on March 12, 2010. [Tr.
32] The claimant appeared in person, represented by counsel. Medical and other
records were submitted for consideration, including updated documents regarding
treatment and medications prescribed for J.A. as of February 22, 2010. [Tr. 33] No
objections were lodged as to the exhibits. [Tr. 33] No request was made to keep the
record open for receipt of additional evidence.

Both J.A. and his grandmother gave testimony, with the adult testifying first.
Darla Angelle has had legal custody of the child since he was an infant. [Tr. 35] J.A.'s
mother has been diagnosed as schizophrenic and bipolar, according to Angelle. [Tr.
44] J.A. was six years old on the hearing date, and he was a first grader at Evangeline
Elementary School. [Tr. 35-36] According to his grandmother, J.A. cannot read; he
had only recently learned to spell and write his name, and his grades were "straight

F's". [Tr. 35-36] J.A. was in the process of being evaluated for Special Education services at his school because he was still functioning at the pre-kindergarten level. [Tr. 36] As of the hearing date, no evaluation report had been generated. [Tr. 37]

Angelle described behavior problems exhibited by J.A. at home and in school. She described outbursts, interruptions/disturbances in class, and J.A.'s inability to get along with other children.  He had been assigned  two in-school suspensions in the school year for disturbing class and hitting others. [Tr. 37] He has no friends at school, according to his grandmother.

At home, J.A. watches television after he completes homework, but it is difficult to direct J.A. to that task. [Tr. 38] His grandmother described having to help him dress in the morning and "stand over him" for him to brush his teeth. [Tr. 39] He does no chores around the house.  He is not allowed to play outdoors without adult supervision because he has destroyed property. [Tr. 39] J.A. has set bedding afire in his room, causing a fire. [Tr. 42] He is also abusive to animals, according to Angelle.

Angelle reported that J.A. has seizures about twice a week. [Tr. 39] She described 'sit and stare' seizures, which have gone undetected at school.  When he is more emotionally upset, his nose bleeds during a seizure, a sign of seizure to the grandmother, although J.A. has nosebleeds without seizures also. [Tr. 39, 43-44] For this condition, J.A. sees Dr. John Flatt once a month.  For his ADHD problems, he

sees Dr. Powlin Manual monthly. He takes medications daily and nightly, which Angelle reports have little effect at school.  For safety reasons, Dr. Flatt has restricted J.A.'s climbing on high things. [Tr. 40]

J.A. responded to questions by the ALJ.  He stated his age and birthday in response to questions. [Tr. 45] He correctly reported he was in first grade, where he was learning to do homework, and he confirmed that he can write his name. [Tr. 46] His favorite subject is "learning," and he feels he is best at football.  He identified two friends at school by name. [Tr. 46] At home he likes to ride his bike, play with stuff and watch action shows on television. [Tr. 47] When asked about having trouble at school, he responded that he "kind of, but no." [Tr. 47] When questioned by the claimant's attorney about his grades, J.A. stated that he has been getting A's and B's. He named his teacher, who he likes. [Tr. 48] He acknowledged taking pills in the morning, noon and at night. [Tr. 49]

At the close of the testimony, there was no request that the record be kept open or any other indication from the claimant of the desire to submit additional evidence. The ALJ declared his intent to review everything in the file and to issue a written report. [Tr. 49]

***The Determination of the ALJ:***

-12-

In his ruling, issued May 19, 2010, the ALJ followed the required three-step sequential process for determining whether J.A. is disabled.  At step one, the ALJ found that J.A. has not engaged in substantial gainful activity at any relevant time. [Tr. 17]  This finding is supported by the record, which contains no evidence that J.A. has engaged in significant physical or mental activities for pay or profit[16] at any relevant time.

At step two, the ALJ found that J.A.'s ADHD is a severe impairment, as is his diagnosed seizure disorder, which impairments cause more than minimal functional limitations. [Tr. 17].  This, too, is supported by the evidence in the record, as described above.

At step three, the ALJ found that J.A. does not have an impairment or combination of impairments that meets or equals a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.924, 416.925 and 416.926). [Tr. 17] He likewise found that J.A.'s impairment does not cause marked limitations in two domains or extreme limitation in one domain and thus, does not meet or equal a Listing.

## Analysis and Discussion

### *The ALJ properly evaluated medical opinion evidence.*

---

[16]      20 C.F.R. § 416.972.

-13-

In support of the assignment of error, the claimant asserts that the ALJ failed to consider and give controlling weight to the opinion of Dr. Powlin Manuel from April 22, 2010. [Rec. Doc. 11, p. 8] Claimant argues that this failure violates provisions of 20 CFR 416.927(d), which calls for evaluation of "every medical opinion we receive."

On April 22, 2010, for the first and only time, Dr. Manuel opined on a Medical Information document for the Lafayette Parish School Board that "the disability" substantially limits one or more of J.A.'s major life activities (caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working), though he did not elaborate regarding the disability or the referenced life activity. [Tr. 165] It appears from the record that this document was submitted by the claimant's attorney after the hearing date and the decision date and as part of a letter of appeal submitted by the attorney on June 29, 2010. [Tr. 161-166] Therefore, the opinion of Dr. Manuel made subject of this assignment of error was not available to the ALJ at the time of the hearing or the rendering of his decision.   On that basis, it cannot be said that the ALJ "failed to consider" the opinion, and it cannot be said that the ALJ failed to give the opinion controlling weight.  The record demonstrates that the ALJ reviewed the record before him at the time of the issuance of his decision, including the detailed reports of Dr. Manuel as described at length above.

-14-

Significantly, the more recent reports of Dr. Manuel available to the ALJ document improved behavior/control on medication, improved grades, improved home conditions, and improved sleep. [Tr. 229-230] These findings are consistent with the reports of J.A.'s long-term pediatrician Dr. Bryan Sibley, which observations are supportive, and not contradictory of the consultative opinion of Dr. Fruge, to which the ALJ gave "significant weight."  Further, the ALJ's grant of "some weight" to the opinions of Dr. Michalik that J.A.'s impairments did not meet, medically equal or functionally equal a listing is supported by the record.  The ALJ found that the evidence showed J.A. to be "more limited" than Dr. Michalik opined, evidencing his reasonably objective consideration of the Michalik opinions. [Tr. 19]

Finally, the claimant urges that the ALJ failed to evaluate or discuss the opinion of Dr. Parker, constituting error under 20 CFR 416.927(d).  Yet the record does not contain an actual medical opinion by Dr. Parker-only the consultant's declaration that he needed additional evidence which he could not find in the file. [Tr. 222] The record demonstrates that additional information was, in fact, requested, collected and available to the ALJ before the issuance of the decision.   The undersigned finds no error here.

***The ALJ properly developed the record.***

-15-

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. Further, it is the ALJ's duty to investigate the facts and develop the arguments for and against granting benefits.[17]   However, the claimant has the duty to obtain medical records and documentation showing that he is disabled.[18]   It is not unreasonable to require a claimant, who is in a better position to provide information about his own condition, to do so.[19]  It is not the ALJ's duty to become the claimant's advocate.[20]

At all times pertinent, the claimant was represented by legal counsel.  The record contains no indication of a request by the claimant or her attorney  for the opportunity to submit additional evidence after the hearing date.  During the hearing, the ALJ took testimony from J.A. and his grandmother about the child's treatment, diagnoses, behavior, functional limitations and development.  Additional detail was provided through questioning by Claimant's attorney.  It is clear from this record that the claimant had the  ample opportunity to present her best case of disability.   In any event, the claimant has failed to make a sufficient showing of prejudice.  "This Court

---

[17]*Sims v. Apfel*, 530 U.S. 103, 111(2000)

[18]*Brock v. Chater*, 84, F.3d 726, 728(5th Cir. 1996); *Thorton v. Schweiker*, 663 F.2d 1312, 1316(5th Cir. 1981).

[19]*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5(1987).

[20]*See Glass v. Shalala*, 43 F.3d 1392, 1396(10th Cir. 1993).

-16-

will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure."[21]

That both the claimant and the ALJ were aware that a school evaluation of J.A. was underway at the time of the hearing, but that a report was not yet available, does not change the duty upon the claimant and her counsel to provide supplemental information/documentation upon its availability.  In this case, without a request that the record remain open or a request that the ALJ delay a decision pending some event, it is difficult to find fault with the timing of the ALJ's decision some two months after the hearing.  In fact, it was not until August, 2010 that the referenced Report was issued-five months after the hearing and three months after the decision date.  Since the Report is dated after the date of the ALJ decision, it is arguably outside the relevant scope of this court's review in any event.  See 42 USC §405(g).  The undersigned finds  no error associated with the failure by the ALJ to consider such evidence which was not before him at the time the decision was issued.

Nevertheless, the fact remains that since the issuance of the Decision, on June 29, 2010 and again on August 27, 2010, there have been submissions into the record of evidence alluded to during the hearing and developed since the hearing and

---

[21]*Carey v. Apfel*, 230 F.3d 131, 142(5th Cir. 2000).

decision. [Tr. 161-65,281-391] While the undersigned finds there was good cause for the ALJ's failure to consider and incorporate that evidence into the prior proceeding and decision,  it is clear that the new evidence is material to the claim before the court.  The cursory reference to the evidence by the Appeals Council [Tr. 1-2] falls short of confirming that it evaluated the specific report of Dr. Manuel from April, 2010 or the entire record including the new and material evidence submitted if it relates to the period on or before the date of the ALJ decision, per the requirement of 20 CFR 404.970(b).  Since at least some of the new and material evidence is dated before the decision date, and in an abundance of caution, the undersigned finds that this record merits further consideration.  Thus, consistent with provisions of 42 U.S.C. §405(g) and 20 CFR 404.970(b), this case should be REMANDED for consideration of the entire record, including the referenced additional, material evidence and other appropriate action resulting therefrom.[22]

### CONCLUSION AND RECOMMENDATION

The undersigned having fully reviewed the entire record on this matter, finds that the ALJ did not err as a matter of law in reaching the final decision in this matter, based on the record before him at the time.  However, the decision was reached

---

[22]Because the undersigned recommends that the matter should be remanded for consideration of other evidence as discussed above, the court need not consider the claimant's third assignment of error at this time.

without the benefit of material evidence which was unavailable to the ALJ at the time the decision was issued.  On that basis, it should be reconsidered.  Therefore,

**IT IS THE RECOMMENDATION** of the undersigned that consistent with provisions of 42 U.S.C. §405(g), this case should be REMANDED for consideration of the above-referenced additional, material evidence and other appropriate action.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 4th day of December, 2012.


_____
Patrick J. Hanna
United States Magistrate Judge